**COLE SCHOTZ P.C.**
A Professional Corporation
Court Plaza North
25 Main Street
Hackensack, New Jersey 07602-0800
Michael D. Sirota, Esq.
Gerald H. Gline, Esq.
Ryan T. Jareck, Esq.
(201) 489-3000
(201) 489-1536 Facsimile
*Proposed Attorneys for Saint Michael's*
*Medical Center, Inc., et al., Debtors-in-Possession*

|  |  |
|---|---|
| In re <br><br> SAINT MICHAEL'S MEDICAL CENTER, INC., *et al.*[1] <br><br> Debtors-in-Possession. | UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY CASE NO. 15-24999 (VFP) <br><br> Chapter 11 <br> (Joint Administration Pending) |
| SAINT MICHAEL'S MEDICAL CENTER, INC., *et al.*, <br><br> Plaintiff. <br><br> v. <br><br> BANK OF NEW YORK MELLON, <br><br> Defendants. | ADV. PRO. NO. 15- <br><br> **COMPLAINT TO AVOID LIENS AND FOR OTHER RELIEF** |

---

[1] The Debtors and Plaintiffs in this adversary proceeding, along with the last four digits of each Debtor's federal identification number are:  Saint Michael's Medical Center, Inc. (6046); Columbus Acquisition Corp. (6342); Saint James Care, Inc. (6230); and University Heights Property Company, Inc. (0162).

Saint Michael's Medical Center, Inc., *et al.,* the within Chapter 11 debtors and debtors-in-possession and plaintiffs in this action (the "**Debtors**" or "**Plaintiffs**"), by and through their proposed counsel, Cole Schotz P.C., files this Complaint against The Bank of New York Mellon Corporation ("**Defendant**"), as master trustee under that certain Master Trust Indenture, dated as of July 1, 2008, between Saint Michael's Medical Center, Inc. and Defendant, and alleges and states as follows:

## NATURE OF ACTION

1.      The Debtors bring this Complaint for the purpose of establishing that certain security interests allegedly conveyed by the Debtors in favor of or as asserted by the Defendant are not properly perfected and therefore are avoidable under Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "**Bankruptcy Code**").  As will be demonstrated below, the executed loan documents do not establish a perfected security interest in certain assets of the Debtors.

2.      As a result, the Debtors request that the Court: (a) declare that the Defendant does not possess a valid perfected security interest or lien with respect to certain assets of the Debtors; (b) avoid Defendant's unperfected security interest in those assets pursuant to 11 U.S.C. § 544 and applicable state law; and (c) obtain such other and further relief as the Court deems just and appropriate.

## JURISDICTION AND VENUE

3.      This is a core proceeding pursuant to, *inter alia*, 28 U.S.C. §§ 157(b)(2)(A), (K) and (O) and is commenced pursuant to, *inter alia*, sections 105(a), 363, 544, 550 and 551 of the Bankruptcy Code, applicable state uniform commercial code laws, 28 U.S.C. §§ 2201 and 2202 and Rule 7001(2) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and other applicable bankruptcy and non-bankruptcy laws and rules.

54020/0001-12049779v1
August 10, 2015

4.      Jurisdiction is conferred on the Court pursuant to 28 U.S.C. § 1334.

5.      Venue is proper under 28 U.S.C. § 1409(a).

## THE PARTIES

6.      Plaintiff, Saint Michael's Medical Center, Inc. is a New Jersey not-for-profit

corporation and has its principal offices at 111 Central Ave, Newark, New Jersey 07102.

7.      Plaintiff, Columbus Acquisition Corp. is a New Jersey not-for-profit corporation

and has its principal offices at 111 Central Ave, Newark, New Jersey 07102.

8.      Plaintiff, Saint James Care, Inc. is a New Jersey not-for-profit corporation and has

its principal offices at 111 Central Ave, Newark, New Jersey 07102.

9.      Plaintiff, University Heights Property Company, Inc. is a New Jersey not-for-

profit corporation and has its principal offices at 111 Central Ave, Newark, New Jersey 07102.

10.     Defendant, The Bank of New York Mellon Corporation is the parent corporation

resulting from the July 1, 2007 merger of the Bank of New York Company, Inc. and Mellon

Financial Corporation.  Bank of New York Mellon Corporation maintains its corporate

headquarters and principal place of business at One Wall Street, New York, New York 10286.

## FACTUAL BACKGROUND

11.     On the date herein (the "**Petition Date**"), the Debtors filed voluntary petitions for

relief pursuant to Chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have

remained in possession of their assets and continued management of their businesses as debtors-

in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No request has been

made for the appointment of a trustee or examiner, and no statutory committee or trustee has

been appointed in the Debtors' Chapter 11 cases.

12.     Established by the Franciscan Sisters of the Poor in 1867, Saint Michael's

Medical Center is a 357-bed licensed regional tertiary-care, teaching, and research center (the

3

"**Hospital**") in the heart of Newark's business and educational district and is accredited by The

Joint Commission.  Combining state-of-the-art technology, the latest diagnostic and therapeutic

procedures, leading-edge research, and a network of highly qualified physicians, nurses, and

allied health professionals, the Hospital provides top-quality health care services delivered with

compassionate care.

13.     The Hospital is home to the Heart and Vascular Institute, which offers a

comprehensive array of innovative cardiac treatments and procedures, and the Regional Cancer

Center, which provides patients with state-of-the-art cancer treatment through the seamless

integration of medical, surgical, and radiation oncology services.  The Hospital has long enjoyed

an outstanding reputation as a premier teaching and research institution and remains an

international leader in the treatment and study of infectious diseases, such as HIV/AIDS and

hepatitis.  The mission of the Debtors is to provide excellence in health care to the communities

they serve.

A.     **The Debtors' Bond Indebtedness**

14.     On July 31, 2008, the New Jersey Health Care Facilities Financing Authority (the

"**Authority**") issued $252,545,000 in state contract bonds, Series 2008A, and then loaned the

proceeds of such bond issuance to the Hospital through the Hospital Asset Transformation

Program ("**HATP**").  Consistent with the HATP and as part of Catholic Health East's purchase

of the Hospital, Saint James Hospital and Columbus Hospital from Cathedral Healthcare, the

proceeds were used to pay off outstanding debt on the two closed hospitals (Saint James Hospital

and Columbus Hospital) and renovate and expand the facilities at the Hospital.

15.     The Hospital entered into the following in connection with the loan from the

Authority: (1) Loan Agreement, dated as of July 1, 2008, by and between the Company and the

4

Authority (the "**Loan Agreement**"); (2) State Contract Promissory Note, dated July 31, 2008,

issued by the Hospital to the Authority (the "**State Contract Note**"); (3) Mortgage and Security

Agreement dated July 31, 2008 (the "**Mortgage**"); (4) Master Trust Indenture, dated as of July 1,

2008, between the Hospital and the Defendant, as Master Trustee (as amended, the "**Master**

**Indenture**"); (5) First Supplemental Indenture, dated as of July 1, 2008, between the Hospital

and Defendant, as Master Trustee (as amended, the "**First Supplemental Indenture**," and

together with the Master Indenture, collectively, the "**Indenture Documents**"); and (6) Hospital

Asset Transformation Program State Contract Bond Resolution (Saint Michael's Medical Center,

Inc., Newark, N.J. Issue), adopted April 24, 2008, as supplemented by a Series Certificate dated

as of July 22, 2008 (the "**Resolution**," and together with the Loan Agreement, the State Contract

Note, the Mortgage and the Indenture Documents, collectively, the "**Loan Documents**").

16.    The State Contract Note was issued pursuant to and is secured under the Indenture

Documents between the Hospital and Defendant.  Under the Indenture Documents, the Hospital

sold, assigned, transferred, set over, pledged and granted a security interest to Defendant in all of

its rights, title and interest in and to: (i) the "Collateral," which includes (a) all receipts, revenues,

income and other moneys received by or on behalf of the Debtors, including, without limitation,

contributions, donations and pledges whether in the form of cash, securities, deposit accounts, or

other personal property, revenues derived from the operation of the Debtors' facilities, and all

rights to receive the same, whether in the form of accounts receivable, contract rights, chattel

paper, instruments or other rights, and the proceeds thereof, and any insurance or condemnation

proceeds thereon, whether now existing or hereafter coming into existence and whether now

owned or held or hereafter acquired by the Debtors (the "**Gross Receipts**"); provided, however,

that Gross Receipts shall not include (1) gifts, grants, bequests, donations and contributions

5

heretofore or hereafter made, designated at the time of making thereof by the donor or maker as being for certain specific purposes, and the income therefrom, to the extent required by such designation, and (2) rents, profits or revenues of any nature derived exclusively from property securing non-recourse indebtedness; (b) any and all property of the Debtors, including, without limitation, all accounts, as-extracted collateral, chattel paper, commercial tort claims, deposit accounts, documents, farm products, fixtures, general intangibles, goods (including, without limitation, inventory and equipment), instruments, investment property and letter of credit rights, whether presently owned or hereafter acquired, together with all Proceeds (as defined in the UCC) and products thereof; provided, however, that Collateral shall not include gifts, grants, bequests, donations and contributions heretofore or hereafter made which are designated at the time of the making thereof by the donor or maker as being for certain specified dedicated purposes, and the income therefrom, to the extent required by such designation; (ii) all moneys, securities and investments held in the Revenue Fund, and (iii) all Proceeds (as defined in the UCC) of any and all of the property described in clauses (i) and (ii) (collectively, the "**BONY Collateral**").

17.     In addition, to further secure the Debtors' obligations under the Loan Documents, the Debtors granted Defendant a mortgage on the Debtors' real property, buildings, structures, improvements and fixtures located at 111 Central Avenue, Newark, NJ 07102 (the "**Mortgaged Property**") and general intangibles related thereto, (b) all rents and moneys payable in respect of any lease agreements executed by the Company with respect thereto, (c) all proceeds of insurance or condemnation awards with respect thereto and (d) warranties or service contracts existing with respect thereto.

54020/0001-12049779v1
August 10, 2015

18.     On August 7, 2008, Defendant filed a UCC-1 financing statement perfecting its

interest in the BONY Collateral.  On July 11, 2013, Defendant filed a UCC-3 continuation

statement.

19.     The Debtors do not maintain any accounts with Defendant and there are no

deposit account control agreements by and among the Debtors, Defendant and a third-party bank

wherein any bank at which the Debtors maintain accounts agreed that it would follow

instructions from Defendant with respect to disposition of the funds in the deposit account

without further consent by the Debtors.

20.     The Debtors maintain an account at Santander Bank (ending 8151) that contains

special purpose funds generated from clinical trial work and drug testing (the "**Special Purpose**

**Account**").  As of June 30, 2008, the Special Purpose Account contained a balance of

$1,756,672.40.  As of the Petition Date, the Special Purpose Account contained a balance of

$1,784,555.70.

21.     The Debtors maintain an account at Bank of America (ending 7388) wherein the

Debtors deposit all grants (the "**Grant Account**," and together with the Special Purpose

Account, the "**Special Accounts**").  As of June 30, 2008, the Grant Account contained a balance

of $2,865,666.26.  As of the Petition Date, the Grant Account contained a balance of

$10,365,110.75.

22.     In addition to the Special Accounts, the Debtors maintain fifteen (15) other

accounts (collectively with the Special Accounts, the "**Bank Accounts**") at the following

banking institutions:  (i) Wells Fargo Bank; (ii) Santander Bank; (iii) PNC Bank; (iv) Bank of

America; and (v) Investors Bank.

54020/0001-12049779v1
August 10, 2015

## FIRST COUNT

### (DECLARATORY RELIEF PURSUANT TO 28 U.S.C. §§ 2201 AND 2202 THAT THE DEFENDANT DOES NOT HAVE A SECURITY INTEREST IN THE SPECIAL ACCOUNTS AS OF THE PETITION DATE)

23.     The Debtors repeat and reallege each of the allegations contained in the above paragraphs as if set forth in full herein.

24.     Under the Loan Documents, the BONY Collateral specifically excludes "gifts, grants, bequests, donations and contributions heretofore or hereafter made, designated at the time of making thereof by the donor or maker as being for certain specific purposes, and the income therefrom, to the extent required by such designation."

25.     The Special Accounts contain funds from grants, bequests, donations and contributions from donors for certain designated specific purposes.

26.     In addition, the Special Accounts contained a balance of $4,622,338.66 as of June 30, 2008, which pre-dates the execution of the Loan Documents and purported perfection by BONY of its interests in the BONY Collateral.

27.     By reason of the foregoing, the Debtors are entitled to a declaration that: (i) the Defendant does not have a properly perfected security interest in the Special Accounts and the funds in such Special Accounts, rendering the Debtors' interests in such property generally available to the Debtors' estates; and (ii) the funds in the Special Accounts are not cash collateral as such term is defined in Section 363(a) of the Bankruptcy Code.

54020/0001-12049779v1
August 10, 2015

## SECOND COUNT

**(DECLARATORY RELIEF PURSUANT TO 28 U.S.C. §§ 2201 AND 2202, AND SECTIONS 105(A), 544(A)(1) AND 550 OF THE BANKRUPTCY CODE THAT THE DEFENDANT DOES NOT HAVE A PROPERLY PERFECTED SECURITY INTEREST IN THE DEBTORS' BANK ACCOUNTS AND CASH AS OF THE PETITION DATE)**

28.     The Debtors repeat and reallege each of the allegations contained in the above paragraphs as if set forth in full herein.

29.     To the extent that the Defendant was granted a security interest in the Debtors' Bank Accounts and cash contained therein by the Debtors pursuant to the Loan Documents, the Defendant did not properly perfect that security interest as of the Petition Date by taking possession or control (either directly or through a bailee or agent) of the Bank Accounts and cash contained therein as required by New Jersey's version of Article 9 of the Uniform Commercial Code to perfect its interest in such Bank Accounts and cash contained therein.

30.     Pursuant to Section 544(a) of the Bankruptcy Code, the Debtors' estates contain the rights and powers of *inter alia* : (i) a creditor that extends credit to the debtor at the time of the commencement of a bankruptcy case, and obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists, or (ii) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such creditor exists.

31.     By reason of the foregoing, the Debtors are entitled to a declaration that: (i) any security interests, pledges, and liens in favor of the Defendant in the Bank Accounts and cash contained therein should be avoided, recovered and preserved for the benefit of the estates to the fullest extent provided under Sections 544(a) and (b) and 550 of the Bankruptcy Code, rendering

9

the Debtors' interests in such property generally available to the Debtors' estates; and (ii) the

cash in the Debtors' Bank Accounts is not cash collateral as such term is defined in Section

363(a) of the Bankruptcy Code.

## THIRD COUNT

**(DECLARATORY RELIEF PURSUANT TO 28 U.S.C. §§ 2201 AND 2202, AND
SECTIONS 105(A), 544(A)(1) AND 550 OF THE BANKRUPTCY CODE THAT THE
DEFENDANT DOES NOT HAVE A PROPERLY PERFECTED SECURITY INTEREST
IN THE PROCEEDS OF THE DEBTORS' MEDICARE AND MEDICAID
RECEIVABLES AS OF THE PETITION DATE)**

32.    The Debtors repeat and reallege each of the allegations contained in the above

paragraphs as if set forth in full herein.

33.    To the extent that the Defendant was granted a security interest in the Debtors'

Medicare and Medicaid receivables by the Debtors pursuant to the Loan Documents, the

Defendant did not properly perfect a security interest in the proceeds thereof as of the Petition

Date by taking possession or control (either directly or through a bailee or agent) of the proceeds

as required by New Jersey's version of Article 9 of the Uniform Commercial Code to perfect its

interest in such proceeds.

34.    Pursuant to Section 544(a) of the Bankruptcy Code, the Debtors' estates contain

the rights and powers of *inter alia* : (i) a creditor that extends credit to the debtor at the time of

the commencement of a bankruptcy case, and obtains, at such time and with respect to such

credit, a judicial lien on all property on which a creditor on a simple contract could have obtained

such a judicial lien, whether or not such a creditor exists, or (ii) a creditor that extends credit to

the debtor at the time of the commencement of the case, and obtains, at such time and with

respect to such credit, an execution against the debtor that is returned unsatisfied at such time,

whether or not such creditor exists.

54020/0001-12049779v1
August 10, 2015

35.      By reason of the foregoing, the Debtors are entitled to a declaration that: (i) any security interests, pledges, and liens in favor of the Defendant in the proceeds of Medicare and Medicaid receivables should be avoided, recovered and preserved for the benefit of the estates to the fullest extent provided under Sections 544(a) and (b) and 550 of the Bankruptcy Code, rendering the Debtors' interests in such property generally available to the Debtors' estates; and (ii) the proceeds of the Medicare and Medicaid receivables is not cash collateral as such term is defined in Section 363(a) of the Bankruptcy Code.

**WHEREFORE,** the Debtors prays for Judgment as follows:

A.      On Count One, a declaration that: (i) the Defendant does not have a properly perfected security interest in the Special Accounts and the proceeds in such Special Accounts, rendering the Debtors' interests in such property generally available to the Debtors' estates; and (ii) the funds in the Special Accounts are not cash collateral as such term is defined in Section 363(a) of the Bankruptcy Code;

B.      On Count Two, a declaration that: (i) the Defendant did not properly perfect its security interest as of the Petition Date in the Debtors' deposit accounts and cash; (ii) any security interests, pledges, and liens in favor of the Defendant in the deposit accounts and cash are avoided, recovered and preserved for the benefit of the estates to the fullest extent provided under Sections 544(a) and (b) and 550 of the Bankruptcy Code, rendering the Debtors' interests in such property generally available to the Debtors' estates; and (iii) the cash in the Debtors' deposit accounts is not cash collateral as such term is defined in Section 363(a) of the Bankruptcy Code.

C.      On Count Three, a declaration that: (i) the Defendant did not properly perfect its security interest as of the Petition Date in the proceeds of the Debtors' Medicare and

11

Medicaid receivables; (ii) any security interests, pledges, and liens in favor of the Defendant in

proceeds of the Medicare and Medicaid receivables thereof are avoided, recovered and preserved

for the benefit of the estates to the fullest extent provided under Sections 544(a) and (b) and 550

of the Bankruptcy Code, rendering the Debtors' interests in such property generally available to

the Debtors' estates; and (iii) the proceeds of the Medicare and Medicaid receivables is not cash

collateral as such term is defined in Section 363(a) of the Bankruptcy Code; and

       D.     awarding such other and further relief as the Court deems equitable and

proper.

COLE SCHOTZ P.C.
*Proposed Attorneys for Saint Michael's*
*Medical Center, Inc., et al., Debtors-in-*
*Possession*


By:    */s/ Michael D. Sirota*
       Michael D. Sirota
       Gerald H. Gline
       Ryan T. Jareck

DATED:  August 10, 2015

54020/0001-12049779v1
August 10, 2015