UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-2(c)**
**COLE SCHOTZ P.C.**
A Professional Corporation
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, NJ 07602-0800
Michael D. Sirota, Esq.
Gerald H. Gline, Esq.
Ryan T. Jareck, Esq.
(201) 489-3000
(201) 489-1536 Facsimile
*Proposed Attorneys for Saint Michael's*
*Medical Center, Inc., et al., Debtors-in-Possession*

In re:

SAINT MICHAEL'S MEDICAL CENTER, INC., *et al.*[1]

Debtors-in-Possession.



**Order Filed on August 25, 2015**
**by Clerk**
**U.S. Bankruptcy Court**
**District of New Jersey**

Case No. 15-24999 (VFP)

Judge: Honorable Vincent F. Papalia

Chapter 11
(Jointly Administered)

**Hearing Date and Time:**
August 24, 2015 at 2:30 p.m. (ET)

**ORDER PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 2002, 6004 AND 6006: (1) APPROVING "STALKING HORSE" ASSET PURCHASE AGREEMENT FOR THE SALE OF SUBSTANTIALLY ALL THE DEBTORS' ASSETS; (2) APPROVING BIDDING PROCEDURES AND FORM, MANNER AND SUFFICIENCY OF NOTICE; (3) SCHEDULING (A) AN AUCTION SALE AND (B) A HEARING TO CONSIDER APPROVING THE HIGHEST AND BEST OFFER; (4) AUTHORIZING THE DEBTORS TO SELL SUBSTANTIALLY ALL THEIR ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (5) AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (6) GRANTING OTHER RELATED RELIEF**

The relief set forth on the following pages, numbered two (2) through sixteen (16), is hereby **ORDERED**.

**DATED: August 25, 2015**

_____
**Honorable Vincent F. Papalia**
**United States Bankruptcy Judge**

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal identification number are: Saint Michael's Medical Center, Inc. (6046); Columbus Acquisition Corp. (6342); Saint James Care, Inc. (6230); and University Heights Property Company, Inc.(0162).

(Page 2)

| | |
|---|---|
| Debtors: | SAINT MICHAEL'S MEDICAL CENTER, INC. |
| Case No. | 15-24999 (VFP) |
| Caption of Order: | ORDER PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 2002, 6004 AND 6006: (1) APPROVING "STALKING HORSE" ASSET PURCHASE AGREEMENT FOR THE SALE OF SUBSTANTIALLY ALL THE DEBTORS' ASSETS; (2) APPROVING BIDDING PROCEDURES AND FORM, MANNER AND SUFFICIENCY OF NOTICE; (3) SCHEDULING (A) AN AUCTION SALE AND (B) A HEARING TO CONSIDER APPROVING THE HIGHEST AND BEST OFFER; (4) AUTHORIZING THE DEBTORS TO SELL SUBSTANTIALLY ALL THEIR ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (5) AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (6) GRANTING OTHER RELATED RELIEF |

THIS MATTER having been opened to the Court by Cole Schotz P.C., proposed attorneys to Saint Michael's Medical Center, Inc., *et al.*, the within debtors and debtors-in-possession (the "**Debtors**"), upon motion pursuant to 11 U.S.C. §§ 363 and 365 and Fed. R. Bankr. P. 6004 for an Order: (1) Approving a "Stalking Horse" Asset Purchase Agreement for the Sale of Substantially All the Debtors' Assets; (2) Approving Bidding Procedures and Form, Manner and Sufficiency of Notice Thereof; (3) Scheduling (a) an Auction Sale and (b) a Hearing to Consider Approving the Highest and Best Offer; (4) Authorizing the Debtors to Sell Substantially All of Their Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; (5) Authorizing the Debtors to Assume and Assign Related Executory Contracts and Unexpired Leases; and (6) Granting Other Related Relief (the "**Motion**");[2] and it appearing that good and sufficient notice of the Motion having been provided, as evidenced by the Affidavit of Service filed with the Court; and the Court having considered all the motion papers, and the arguments of

---

[2] All capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to them in the verified application submitted in support of the Motion (the "**Application**").

3449087v.2
August 24, 2015

(Page 3)

| | |
|---|---|
| Debtors: | SAINT MICHAEL'S MEDICAL CENTER, INC. |
| Case No. | 15-24999 (VFP) |
| Caption of Order: | ORDER PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 2002, 6004 AND 6006: (1) APPROVING "STALKING HORSE" ASSET PURCHASE AGREEMENT FOR THE SALE OF SUBSTANTIALLY ALL THE DEBTORS' ASSETS; (2) APPROVING BIDDING PROCEDURES AND FORM, MANNER AND SUFFICIENCY OF NOTICE; (3) SCHEDULING (A) AN AUCTION SALE AND (B) A HEARING TO CONSIDER APPROVING THE HIGHEST AND BEST OFFER; (4) AUTHORIZING THE DEBTORS TO SELL SUBSTANTIALLY ALL THEIR ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (5) AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (6) GRANTING OTHER RELATED RELIEF |

counsel; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors; and other good cause having been shown,

IT IS ORDERED as follows:

1.    The form of asset purchase agreement (the "**APA**") attached as Exhibit "A" to the Application (as further modified or amended) be and hereby is approved to serve as the basis for the Debtors' solicitation of higher or otherwise better bids for the Assets as modified herein.  The final form of asset purchase agreement (the "**Final APA**") and the Debtors' request to consummate the sale transaction pursuant thereto shall be subject to further approval at the Sale Hearing (defined below).

2.    The proposed sale of the Assets to Prime Healthcare Services – Saint Michael's, LLC (the "**Proposed Purchaser**") pursuant to the APA shall be subject to higher and otherwise better offers.

3.    Payment of the Break-Up Fee in the amount of $1,228,750.00 and an expense reimbursement of up to $200,000.00 (collectively, the "**Bid Protections**") payable at

3449087v.2
August 24, 2015

| (Page 4) | |
|---|---|
| Debtors: | SAINT MICHAEL'S MEDICAL CENTER, INC. |
| Case No. | 15-24999 (VFP) |
| Caption of Order: | ORDER PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 2002, 6004 AND 6006: (1) APPROVING "STALKING HORSE" ASSET PURCHASE AGREEMENT FOR THE SALE OF SUBSTANTIALLY ALL THE DEBTORS' ASSETS; (2) APPROVING BIDDING PROCEDURES AND FORM, MANNER AND SUFFICIENCY OF NOTICE; (3) SCHEDULING (A) AN AUCTION SALE AND (B) A HEARING TO CONSIDER APPROVING THE HIGHEST AND BEST OFFER; (4) AUTHORIZING THE DEBTORS TO SELL SUBSTANTIALLY ALL THEIR ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (5) AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (6) GRANTING OTHER RELATED RELIEF |

such times and under the circumstances set forth in and in accordance with the terms of the APA

is hereby approved. The Bid Protections are an essential inducement and condition relating to

the Proposed Purchaser's entry into the APA, and the Bid Protections: (i) if triggered, shall be

deemed to be an actual and necessary cost and expense of preserving the estates; (ii) are

reasonable and appropriate in light of the size and nature of the proposed sale, the necessity to

quickly consummate the sale and resources that have been and will continue to be expended by

the Proposed Purchaser pending the sale hearing; (iii) has been negotiated by the parties and their

respective advisors at arms'-length and in good faith; and (iv) are necessary to ensure that the

Proposed Purchaser will continue to pursue the closing of the sale. The terms of the APA shall

govern (i) the conditions under which the Purchaser's bid and the APA are terminable, and

(ii) payment or other disposition of the Bid Protections.

4.      The provisions of this Order respecting the grant of the Bid Protections

shall survive entry of any order which may be entered (i) approving the Sale, or (ii) confirming

any Plan in the Case, or (iii) converting the Chapter 11 case to a case under Chapter 7 of the

3449087v.2
August 24, 2015

(Page 5)

| | |
|---|---|
| Debtors: | SAINT MICHAEL'S MEDICAL CENTER, INC. |
| Case No. | 15-24999 (VFP) |
| Caption of Order: | ORDER PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 2002, 6004 AND 6006: (1) APPROVING "STALKING HORSE" ASSET PURCHASE AGREEMENT FOR THE SALE OF SUBSTANTIALLY ALL THE DEBTORS' ASSETS; (2) APPROVING BIDDING PROCEDURES AND FORM, MANNER AND SUFFICIENCY OF NOTICE; (3) SCHEDULING (A) AN AUCTION SALE AND (B) A HEARING TO CONSIDER APPROVING THE HIGHEST AND BEST OFFER; (4) AUTHORIZING THE DEBTORS TO SELL SUBSTANTIALLY ALL THEIR ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (5) AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (6) GRANTING OTHER RELATED RELIEF |

Bankruptcy Code, or (iv) dismissing the Chapter 11 case, or (v) withdrawing of the reference of

the Chapter 11 case from this Court, or (vi) providing for abstention from handling or retaining

of jurisdiction of this Chapter 11 case in this Court, and the terms and provisions of this Order as

well as the Bid Protections granted pursuant to this Order and in the APA shall continue in full

force and effect notwithstanding the entry of such order.  To the extent the Debtors' obligation

with respect to the Bid Protections are otherwise still in effect, the obligations to pay such Bid

Protections shall not be discharged by the entry of an order confirming a Plan.  To the extent the

Debtors' obligation respecting the Bid Protections are otherwise still in effect, the Debtors shall

not propose or support any Plan that is not conditioned upon the payment in full in cash of the

Bid Protections, on or prior to the earlier of (i) the effective date of such Plan, if the Bid

Protections shall then be due and owing or (ii) the date such Bid Protections shall be due and

owing.

5.    The procedures governing the solicitation of bids for the sale of the Assets

and the procedures for an auction sale of the Assets (the "**Auction**"), if necessary, attached

3449087v.2
August 24, 2015

(Page 6)

| | |
|---|---|
| Debtors: | SAINT MICHAEL'S MEDICAL CENTER, INC. |
| Case No. | 15-24999 (VFP) |
| Caption of Order: | ORDER PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 2002, 6004 AND 6006: (1) APPROVING "STALKING HORSE" ASSET PURCHASE AGREEMENT FOR THE SALE OF SUBSTANTIALLY ALL THE DEBTORS' ASSETS; (2) APPROVING BIDDING PROCEDURES AND FORM, MANNER AND SUFFICIENCY OF NOTICE; (3) SCHEDULING (A) AN AUCTION SALE AND (B) A HEARING TO CONSIDER APPROVING THE HIGHEST AND BEST OFFER; (4) AUTHORIZING THE DEBTORS TO SELL SUBSTANTIALLY ALL THEIR ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (5) AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (6) GRANTING OTHER RELATED RELIEF |

---

hereto as **Exhibit 1** (the "**Bidding Procedures**"), are hereby authorized, approved and made a part of this Order as if fully set forth herein.

6.    In conjunction with the provisions of this Order, the procedures governing the assumption and assignment of executory contracts and unexpired leases attached hereto as **Exhibit 2** (the "**Assumption and Assignment Procedures**"), are hereby authorized, approved and made a part of this Order as if fully set forth herein; provided, however, all assumed executory contracts or unexpired leases must be disclosed before the close of the sale hearing.

7.    Subject to decretal paragraph 6 above, the form of Notice of the Debtors' Intent to Assume and Assign Certain Executory Contracts and Unexpired Leases and of the Associated Cure Amounts (the "**Notice of Possible Assumption and Assignment**"), which identifies, among other things, the amounts necessary to cure defaults under executory contracts and unexpired leases ("**Cure Amounts**"), attached hereto as **Exhibit 3**, is approved. Notwithstanding any of the foregoing, with respect to the assumption and assignment of the Debtors' Medicare Provider Agreements, any Cure Amounts will be determined in accordance

6

3449087v.2
August 24, 2015

(Page 7)

| | |
|---|---|
| Debtors: | SAINT MICHAEL'S MEDICAL CENTER, INC. |
| Case No. | 15-24999 (VFP) |
| Caption of Order: | ORDER PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 2002, 6004 AND 6006: (1) APPROVING "STALKING HORSE" ASSET PURCHASE AGREEMENT FOR THE SALE OF SUBSTANTIALLY ALL THE DEBTORS' ASSETS; (2) APPROVING BIDDING PROCEDURES AND FORM, MANNER AND SUFFICIENCY OF NOTICE; (3) SCHEDULING (A) AN AUCTION SALE AND (B) A HEARING TO CONSIDER APPROVING THE HIGHEST AND BEST OFFER; (4) AUTHORIZING THE DEBTORS TO SELL SUBSTANTIALLY ALL THEIR ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (5) AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (6) GRANTING OTHER RELATED RELIEF |

with the federal Medicare statute and regulations and the right of the United States Department of Health and Human Services to object to the Court's jurisdiction to determine the foregoing Cure Amount is preserved.

8.      Within ten (10) days after the entry of this Order, the Debtors shall serve by first class or overnight mail or electronic mail the Notice of Possible Assumption and Assignment on all non-debtor parties to the Assumed Contracts and Leases, and their counsel of record.  The Notice of Possible Assumption and Assignment shall identify the Assumed Contracts and Leases and provide the Cure Amounts that the Debtors believe must be paid to cure all defaults under the Assumed Contracts and Leases as of the projected date of closing. Notice of publication of the Bidding Procedures, as provided in section II.H. of the Bidding Procedures, shall occur no later than fourteen (14) days from the entry of this Order.  In the event that the Successful Bidder modifies the list of Assumed Contracts and Leases, including by way of addition or removal of contracts and leases from the list, the Debtors shall promptly notify the relevant counterparties of any such modifications.  Notwithstanding anything to the contrary in

7

Debtors:           SAINT MICHAEL'S MEDICAL CENTER, INC.
Case No.           15-24999 (VFP)
Caption of Order:  ORDER PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R.
                   BANKR. P. 2002, 6004 AND 6006: (1) APPROVING "STALKING
                   HORSE" ASSET PURCHASE AGREEMENT FOR THE SALE OF
                   SUBSTANTIALLY ALL THE DEBTORS' ASSETS; (2) APPROVING
                   BIDDING PROCEDURES AND FORM, MANNER AND SUFFICIENCY
                   OF NOTICE; (3) SCHEDULING (A) AN AUCTION SALE AND (B) A
                   HEARING TO CONSIDER APPROVING THE HIGHEST AND BEST
                   OFFER; (4) AUTHORIZING THE DEBTORS TO SELL
                   SUBSTANTIALLY ALL THEIR ASSETS FREE AND CLEAR OF
                   LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (5)
                   AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN
                   EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (6)
                   GRANTING OTHER RELATED RELIEF

this Order, the Debtors shall notify Cigna HealthCare of New Jersey, Inc. ("**Cigna**") of the proposed disposition of the Hospital Managed Care Agreement, effective November 1, 1997, between Cigna and Saint Michael's Medical Center, Inc. no later than thirty (30) days prior to the Closing Date.

9.      As set forth in the Assumption and Assignment Procedures, any objection to (a) the scheduled Cure Amount, (b) the assumption and assignment to the Proposed Purchaser of such executory contract and unexpired leases listed among the Assumed Contracts and Leases and/or (c) the ability of the Proposed Purchaser to provide adequate assurance of future performance, shall be filed and served (in accordance with paragraph 16 below) by no later than **October 21, 2015, at 4:00 p.m. (prevailing Eastern Time)**; provided, however, that, to the extent that the list of Assumed Contracts and Leases is modified after October 14, 2015, objections to the assumption and assignment of any contracts and/or leases added to the list of Assumed Contracts and Leases ("**Added Contracts**") shall be due no later than seven (7) days following service of notice of the modification upon the non-debtor parties to the Added

8

3449087v.2
August 24, 2015

| (Page 9) | |
|---|---|
| Debtors: | SAINT MICHAEL'S MEDICAL CENTER, INC. |
| Case No. | 15-24999 (VFP) |
| Caption of Order: | ORDER PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 2002, 6004 AND 6006: (1) APPROVING "STALKING HORSE" ASSET PURCHASE AGREEMENT FOR THE SALE OF SUBSTANTIALLY ALL THE DEBTORS' ASSETS; (2) APPROVING BIDDING PROCEDURES AND FORM, MANNER AND SUFFICIENCY OF NOTICE; (3) SCHEDULING (A) AN AUCTION SALE AND (B) A HEARING TO CONSIDER APPROVING THE HIGHEST AND BEST OFFER; (4) AUTHORIZING THE DEBTORS TO SELL SUBSTANTIALLY ALL THEIR ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (5) AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (6) GRANTING OTHER RELATED RELIEF |

Contracts.  To the extent that the list of Assumed Contracts and Leases is modified later than seven days prior to the Sale Hearing, the proposed assumption and assignment of any Added Contracts shall not be heard or considered by the Court at the Sale Hearing absent consent of the non-debtor third party to such contract or lease.  Adequate Assurance Information (as defined in the Assumption and Assignment Procedures) for the Proposed Purchaser shall be provided to Cigna and any party requesting Adequate Assurance Information pursuant to the procedures set forth in the Assumption and Assignment Procedures by no later than **October 14, 2015, at 4:00 p.m. (prevailing Eastern Time)**.

10.    Unless a non-debtor party to an Assumed Contract and Lease timely files an objection in accordance with the preceding paragraph, but subject to paragraph 11 below, such non-debtor party shall be (i) deemed to have stipulated that the Cure Amount(s) as determined by the Debtors is correct, (ii) forever barred, estopped and enjoined from asserting or claiming against the Debtors or the Proposed Purchaser that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assumed

9

Debtors:          SAINT MICHAEL'S MEDICAL CENTER, INC.
Case No.          15-24999 (VFP)
Caption of Order: ORDER PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R.
                  BANKR. P. 2002, 6004 AND 6006: (1) APPROVING "STALKING
                  HORSE" ASSET PURCHASE AGREEMENT FOR THE SALE OF
                  SUBSTANTIALLY ALL THE DEBTORS' ASSETS; (2) APPROVING
                  BIDDING PROCEDURES AND FORM, MANNER AND SUFFICIENCY
                  OF NOTICE; (3) SCHEDULING (A) AN AUCTION SALE AND (B) A
                  HEARING TO CONSIDER APPROVING THE HIGHEST AND BEST
                  OFFER; (4) AUTHORIZING THE DEBTORS TO SELL
                  SUBSTANTIALLY ALL THEIR ASSETS FREE AND CLEAR OF
                  LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (5)
                  AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN
                  EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (6)
                  GRANTING OTHER RELATED RELIEF

---

Contract and Lease(s) or that there is any objection or defense to the assumption and assignment

of such Assumed Contract(s) and Lease(s), (iii) forever barred from objecting to the assignment

of the Assumed Contract and Lease(s) to the Proposed Purchaser, including from any argument

that there exist conditions to assumption and assignment that must be satisfied under such

Assumed Contract and Lease before it can be assumed and assigned to the Proposed Purchaser or

that any required consent to assignment has not been given, (iv) forever barred from objecting to

the adequacy of the Proposed Purchaser's assurance of future performance and/or (v) that there

exists any other basis on which to object to such assumption and assignment.

11.    If the bid of the Proposed Purchaser is not the Successful Bidder, the non-

debtor parties to the Assumed Contracts and Leases shall have until the Sale Objection Deadline

(as defined in paragraph 16 below) to object to the assumption and assignment of such Assumed

Contract and Lease solely on the issue of whether the Successful Bidder (if other than the

Proposed Purchaser) can provide adequate assurance of future performance as required by

section 365 of the Bankruptcy Code.

3449087v.2
August 24, 2015

| | |
|---|---|
| Debtors: | SAINT MICHAEL'S MEDICAL CENTER, INC. |
| Case No. | 15-24999 (VFP) |
| Caption of Order: | ORDER PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 2002, 6004 AND 6006: (1) APPROVING "STALKING HORSE" ASSET PURCHASE AGREEMENT FOR THE SALE OF SUBSTANTIALLY ALL THE DEBTORS' ASSETS; (2) APPROVING BIDDING PROCEDURES AND FORM, MANNER AND SUFFICIENCY OF NOTICE; (3) SCHEDULING (A) AN AUCTION SALE AND (B) A HEARING TO CONSIDER APPROVING THE HIGHEST AND BEST OFFER; (4) AUTHORIZING THE DEBTORS TO SELL SUBSTANTIALLY ALL THEIR ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (5) AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (6) GRANTING OTHER RELATED RELIEF |

12.     If a non-debtor counterparty to an executory contract or unexpired lease among the Assumed Contracts and Leases files an objection asserting a cure amount higher than the proposed Cure Amount (a "**Disputed Cure Amount**"), then (a) the Debtors shall attempt to resolve such Disputed Cure Amount prior to the Sale Hearing or (b) to the extent the parties are unable to consensually resolve the dispute prior to the Sale Hearing, then the amount to be paid under section 365 of the Bankruptcy Code with respect to such Disputed Cure Amount will be determined at the Sale Hearing. All other objections to the proposed assumption and assignment of an executory contract or unexpired lease among the Assumed Contracts and Leases will be heard at the Sale Hearing.

13.     A hearing to confirm the results of the Auction, if such Auction is conducted, and/or to authorize and direct the Debtors to sell the Assets and otherwise consummate the transactions contemplated by the APA or such other competing asset purchase agreement memorializing a higher and better offer, including the assumption and assignment of the executory contracts or unexpired leases among the Assumed Contracts and Leases, will be

11

(Page 12)

| | |
|---|---|
| Debtors: | SAINT MICHAEL'S MEDICAL CENTER, INC. |
| Case No. | 15-24999 (VFP) |
| Caption of Order: | ORDER PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 2002, 6004 AND 6006: (1) APPROVING "STALKING HORSE" ASSET PURCHASE AGREEMENT FOR THE SALE OF SUBSTANTIALLY ALL THE DEBTORS' ASSETS; (2) APPROVING BIDDING PROCEDURES AND FORM, MANNER AND SUFFICIENCY OF NOTICE; (3) SCHEDULING (A) AN AUCTION SALE AND (B) A HEARING TO CONSIDER APPROVING THE HIGHEST AND BEST OFFER; (4) AUTHORIZING THE DEBTORS TO SELL SUBSTANTIALLY ALL THEIR ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (5) AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (6) GRANTING OTHER RELATED RELIEF |

held before the Honorable Vincent F. Papalia, United States Bankruptcy Judge, at the United States Bankruptcy Court, Martin Luther King, Jr. Federal Building, 50 Walnut Street, Third Floor, Newark, New Jersey 07102, Courtroom 3A, on **November 12, 2015, at 10:00 a.m. (prevailing Eastern Time)** (the "**Sale Hearing**").

14.    The Sale Hearing may be continued, from time to time, without further notice to creditors or other parties in interest other than by announcement of said continuance before the Court on the date scheduled for such hearing or in the hearing agenda for such hearing.

15.    Within two (2) business days after entry of this Order (the "**Mailing Date**"), the Debtors shall serve a notice regarding the sale of the Assets substantially in the form attached hereto as **Exhibit 4** (the "**Sale Notice**"), together with copies of this Order and each of the Exhibits hereto via electronic mail or telecopy or, if not available, overnight mail upon the following parties: (a) all potential purchasers as identified by the Debtors regarding the Assets; (b) the Office of the United States Trustee (Attn: Fran Steele, Esq.), One Newark Center, Suite

3449087v.2
August 24, 2015

Debtors:              SAINT MICHAEL'S MEDICAL CENTER, INC.
Case No.              15-24999 (VFP)
Caption of Order:     ORDER PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R.
                      BANKR. P. 2002, 6004 AND 6006: (1) APPROVING "STALKING
                      HORSE" ASSET PURCHASE AGREEMENT FOR THE SALE OF
                      SUBSTANTIALLY ALL THE DEBTORS' ASSETS; (2) APPROVING
                      BIDDING PROCEDURES AND FORM, MANNER AND SUFFICIENCY
                      OF NOTICE; (3) SCHEDULING (A) AN AUCTION SALE AND (B) A
                      HEARING TO CONSIDER APPROVING THE HIGHEST AND BEST
                      OFFER; (4) AUTHORIZING THE DEBTORS TO SELL
                      SUBSTANTIALLY ALL THEIR ASSETS FREE AND CLEAR OF
                      LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (5)
                      AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN
                      EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (6)
                      GRANTING OTHER RELATED RELIEF

2100, Newark, NJ 07102; (c) counsel for the Proposed Purchaser, Adam T. Berkowitz, Esq.,

Garfunkel Wild, P.C., 111 Great Neck Road, Great Neck, NY 11021; (d) proposed counsel to the

Committee, Andrew Sherman, Esq., Sills, Cummis & Gross P.C., One Riverfront Plaza, Newark,

NJ 07102; (e) the New Jersey Health Care Facilities Financing Authority (Attn: Mr. Mark

Hopkins, Executive Director), Station Plaza Building #4, 22 S. Clinton Ave., Trenton, NJ 08609-

1212; (f) counsel to the Bank of New York Mellon, as indenture trustee, Thomas A. Pitta, Esq.,

Emmet, Marvin & Martin, LLP, 120 Broadway, 32nd Floor, New York, NY 10271; (g) the

Internal Revenue Service, Insolvency Section; (h) the Internal Revenue Service, Department of

Treasury; (i) the New Jersey Department of Treasury; (j) the New Jersey Department of Health

(Attn: Mr. William Conroy, Deputy Commissioner), 369 S. Warren St., Trenton, NJ 08608; (k)

the Office of the Attorney General of the State of New Jersey; (l) the Office of the United States

Attorney (Attn: Anthony J. LaBruna, Assistant U.S. Attorney), 970 Broad Street, Suite 700,

Newark, NJ 07102; (m) counsel to Trinity Health Corporation, Buchanan Ingersoll & Rooney

PC (Attn: William H. Schorling, Esq.), Two Liberty Place, 50 S. 16th Street, Suite 3200,

3449087v.2
August 24, 2015

Debtors:          SAINT MICHAEL'S MEDICAL CENTER, INC.

Case No.          15-24999 (VFP)

Caption of Order:  ORDER PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R.
BANKR. P. 2002, 6004 AND 6006: (1) APPROVING "STALKING
HORSE" ASSET PURCHASE AGREEMENT FOR THE SALE OF
SUBSTANTIALLY ALL THE DEBTORS' ASSETS; (2) APPROVING
BIDDING PROCEDURES AND FORM, MANNER AND SUFFICIENCY
OF NOTICE; (3) SCHEDULING (A) AN AUCTION SALE AND (B) A
HEARING TO CONSIDER APPROVING THE HIGHEST AND BEST
OFFER; (4) AUTHORIZING THE DEBTORS TO SELL
SUBSTANTIALLY ALL THEIR ASSETS FREE AND CLEAR OF
LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (5)
AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (6)
GRANTING OTHER RELATED RELIEF

---

Philadelphia, PA 19102-2555; (n) the Debtors' twenty (20) largest unsecured creditors; (o)

counsel to 1199, Mitchell Malzberg, Esq., 6 E. Main Street, Suite 7, Clinton, NJ 08809; (p)

counsel to JNESO, Joseph Schwartz, Esq., Riker Danzig Scherer Hyland Perretti LLP,

Headquarters Plaza, One Speedwell Avenue, Morristown, NJ 07962-1981; (q) all parties-in-

interest who have requested notice pursuant to Bankruptcy Rule 2002; and (r) all parties who are

known to possess or assert a lien, claim, encumbrance or interest in or upon any of the Assets.  In

addition, by the Mailing Date, the Debtors shall serve, by first-class mail, postage prepaid, the

Sale Notice only upon all known creditors, to the extent not otherwise served in accordance with

the preceding sentence.

16.     Except as set forth to the contrary above, Objections, if any, whether to

final approval of the Sale and assumption contemplated by the APA shall (i) be in writing, (ii)

state with particularity the basis of the objection; and (iii) be filed with the Clerk of the United

States Bankruptcy Court electronically by attorneys who regularly practice before the

Bankruptcy Court in accordance with D.N.J. LBR 5005-1 and the Appendix thereto,

14

(Page 15)

| | |
|---|---|
| Debtors: | SAINT MICHAEL'S MEDICAL CENTER, INC. |
| Case No. | 15-24999 (VFP) |
| Caption of Order: | ORDER PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 2002, 6004 AND 6006: (1) APPROVING "STALKING HORSE" ASSET PURCHASE AGREEMENT FOR THE SALE OF SUBSTANTIALLY ALL THE DEBTORS' ASSETS; (2) APPROVING BIDDING PROCEDURES AND FORM, MANNER AND SUFFICIENCY OF NOTICE; (3) SCHEDULING (A) AN AUCTION SALE AND (B) A HEARING TO CONSIDER APPROVING THE HIGHEST AND BEST OFFER; (4) AUTHORIZING THE DEBTORS TO SELL SUBSTANTIALLY ALL THEIR ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (5) AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (6) GRANTING OTHER RELATED RELIEF |

*Administrative Procedures For Filing, Signing And Verifying Documents By Electronic Means* (the "**Administrative Procedures**") (a copy of the aforementioned rule and the Administrative Procedures can be found at www.njb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties-in-interest, and shall be served in accordance with the service requirements of the Administrative Procedures by no later than **November 6, 2015, at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**").

17.    The Debtors, in consultation with the Committee, are authorized to take all of the actions reasonably necessary as contemplated by or consistent with this Order, the Bidding Procedures and the Assumption and Assignment Procedures.

18.    The Committee, and any successor to the bankruptcy estate, including any liquidating trustee, shall be afforded reasonable access to any acquired books and records after the sale for a period of not less than three (3) years, and the Proposed Purchaser or a Successful Bidder shall preserve the acquired books and records for at least that period of time.

15

(Page 16)

| | |
|---|---|
| Debtors: | SAINT MICHAEL'S MEDICAL CENTER, INC. |
| Case No. | 15-24999 (VFP) |
| Caption of Order: | ORDER PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 2002, 6004 AND 6006: (1) APPROVING "STALKING HORSE" ASSET PURCHASE AGREEMENT FOR THE SALE OF SUBSTANTIALLY ALL THE DEBTORS' ASSETS; (2) APPROVING BIDDING PROCEDURES AND FORM, MANNER AND SUFFICIENCY OF NOTICE; (3) SCHEDULING (A) AN AUCTION SALE AND (B) A HEARING TO CONSIDER APPROVING THE HIGHEST AND BEST OFFER; (4) AUTHORIZING THE DEBTORS TO SELL SUBSTANTIALLY ALL THEIR ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (5) AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (6) GRANTING OTHER RELATED RELIEF |

19.     This Court shall retain jurisdiction: (a) to interpret, implement and enforce the terms and provisions of this Order; (b) to enter Orders in aid or furtherance of this Order; and (c) to adjudicate any and all remaining issues concerning the Debtors' right and authority to assume, assign and/or sell the Assets, including to approve the sale at the Sale Hearing.

3449087v.2
August 24, 2015

# EXHIBIT 1

## Exhibit 1

### BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed in connection with the sale of certain tangible and intangible assets (the "Assets") of Saint Michael's Medical Center, Inc. ("Parent") and certain of its direct and indirect subsidiaries (collectively, the "Debtors" or the "Sellers") in connection with the jointly administered chapter 11 cases pending in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") under case number 15-24999 (VFP). The transaction contemplated herein is subject to approval by the Bankruptcy Court pursuant to sections 363 and 365 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code").

The Debtors have agreed to the terms of an asset purchase agreement between the Debtors and Prime Healthcare Services – Saint Michael's, LLC (the "Prime"), pursuant to which Prime shall acquire the Assets on the terms and conditions specified therein (together with the schedules and related documents thereto, the "Stalking Horse Agreement"). The sale transaction pursuant to the Stalking Horse Agreement is subject to competitive bidding as set forth herein. Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Stalking Horse Agreement.

The Bidding Procedures set forth herein describe, among other things, the assets available for sale, the manner in which bidders and bids become Potential Bidders, Qualified Bidders and Qualified Bids (each as defined herein), respectively, the receipt and negotiation of bids received, the Conduct of any Auction (as defined herein), the ultimate selection of the Successful Bidder, and the Bankruptcy Court's approval thereof (collectively, the "Bidding Process"). The Debtors will consult with, among others, the official committee of unsecured creditors (the "Committee") throughout the bidding process. In the event that the Debtors and any party disagree as to the interpretation or application of these Bidding Procedures, the Bankruptcy Court shall have jurisdiction to hear and resolve such dispute.

## I.    ASSETS TO BE SOLD

The Debtors seek to complete a sale of all or substantially all of the Assets (the "Sale"). The Assets comprise, among other things:

>           (a)      except for the Excluded Real Property, all of the real property that is owned by the Sellers, including, without limitation, the real property that is used with respect to the operation of the hospital and the real property that is described in Schedule 1.7(a) to the Stalking Horse Agreement, together with all buildings, improvements and fixtures located thereupon, including, without limitation, all buildings and other improvements then under construction;

>           (b)      all of the Sellers' interests, to the extent assignable or transferrable in real property that is leased by a Seller Party, including, without limitation, the leased real property described in Schedule 1.7(b) to the Stalking Horse Agreement;

(c)      all of the tangible personal property owned by the Sellers including equipment, furniture, fixtures, machinery, vehicles, office furnishings, and leasehold improvements, including, without limitation, the personal property described in Schedule 1.7(c) to the Stalking Horse Agreement (the "Personal Property");

(d)      all cash, cash equivalents and short-term investments held in any account in the name of or for the benefit of any Seller, if any;

(e)      all accounts owed to, notes, interest payable under the foregoing and other receivables of Seller, including accounts, notes or other amounts receivable from physicians or medical groups, and all claims, rights, interests and proceeds related thereto, including all accounts and other receivables, disproportionate share payments and cost report settlements related thereto, in each case arising from the rendering of services or provision of goods, products or supplies to inpatients and outpatients at the Hospital, billed and unbilled, recorded and unrecorded, for services, goods, products and supplies provided by Seller prior to the Effective Time whether payable by Medicare, Medicaid, TRICARE, medically indigent assistance programs, Blue Cross, Blue Shield or any other payor (including, without limitation any insurance company, health care service plan, self-funded health plan), including any monies allocated to the Hospital pursuant to any charity program in New Jersey (such as the Hospital Care Payment Assistance Program and the Health Care Stabilization Fund), or any health care provider or network (such as a health maintenance organization, preferred provider organization or any other managed care program) or any fiscal intermediary of the foregoing, private pay patients, private insurance or by any other source ("Accounts Receivable");

(f)      all documents, records, correspondence, work papers and other documents other than patient records, relating to the Accounts Receivable;

(g)      all of Seller's rights, to the extent assignable or transferable, to all licenses, provider numbers, permits, approvals, certificates of need, certificates of exemption, franchises, accreditations and registrations and other governmental licenses, permits or approvals issued to any Seller Party for use in the operation of the Hospital (the "Licenses"), including without limitation, the Licenses, Provider Agreement(s), and Provider Number(s) assigned to Seller by the Medicare, Medicaid and TRICARE programs, all as described in Schedule 1.7(i) to the Stalking Horse Agreement, subject to the government's approval of the assignment and assumption by Purchaser of any Sellers' current and valid Provider Agreement and/or License;

(h)      all of Sellers' interest, to the extent assignable or transferable, in and to all real property and personal property leases with respect to the operation of the hospital herein except for the Excluded Leases;

2

(i)    all of Sellers' interest, to the extent assignable or transferable, in and to all contracts and agreements (including, but not limited to, purchase orders) with respect to the operation of the hospital, except for the Excluded Contracts;

(j)    all of those advance payments, prepayments, prepaid expenses, deposits and the like which exist as of the Closing Date;

(k)    except as excluded by Section 1.8(i) of the Stalking Horse Agreement, all inventories of supplies, drugs, food, janitorial and office supplies and other disposables and consumables;

(l)    all rights to settlements and retroactive adjustments, if any, whether arising under a cost report of any Seller Party or otherwise, for any reporting periods ending on or prior to the Effective Time, whether open or closed, arising from or against the United States government under the terms of the Medicare or Medicaid programs or TRICARE (formerly the Civilian Health and Medical Program of the Uniformed Services);

(m)    all Medicare or Medicaid disproportionate share replacement payments (the "DSH Payments") received on and after the Effective Time regardless of the State fiscal year for which the DSH Payments are made in reference to and regardless of the State fiscal year for which the data was derived to calculate eligibility for such payments;

(n)    all rights, if any, to meaningful use payments or recoveries;

(o)    all rights to receive HITECH Payments under the Medicare EHR Incentive Program or under the New Jersey Medicaid EHR Incentive Program (including all rights to pursue such payment and/or appeal any decision regarding such payments) for any applicable fiscal year (for purposes of the Stalking Horse Agreement, "HITECH Payments" means Medicare and Medicaid incentive payments and rights to receive such payments based on attestations submitted or to be submitted with respect to "meaningful use" of certified electronic health record technology ("EHR Technology") (as those terms are defined under the Health Information Technology for Economic and Clinical Health Act (the "HITECH Act"), pursuant to the requirements of the implementing regulations under the HITECH Act);

(p)    all documents, records, operating manuals, files and computer software with respect to the operation of the hospital including, without limitation, all patient records, medical records, employee records, financial records with respect to the operation of the hospital, equipment records, construction plans and specifications, and medical and administrative libraries, except for any of the foregoing that are proprietary to Seller or Sellers' sole corporate member, Maxis Health System, a Pennsylvania nonprofit corporation,;

(q)    the electronic funds transfer accounts of the Facilities (the "EFT Accounts"), all other bank accounts into which accounts receivable pertaining to

3

the hospital are deposited, and all information necessary to assess the EFT Accounts and such other accounts, but excluding any cash, cash equivalents or short-term investments held in the EFT Accounts or such other accounts as of the Closing;

(r)    all of Sellers' interests in those joint ventures, partnerships, corporations and limited liability companies listed on Schedule 1.7(t) to the Stalking Horse Agreement;

(s)    to the extent specifically set forth in Section 1.11 of the Stalking Horse Agreement, benefits, proceeds or any other amounts payable under any policy of insurance maintained by Seller with respect to the physical condition of the Assets;

(t)    the interest of Seller in computer software, programs, systems, healthcare information systems and related documentation, including any and all electronic health record systems and technology owned by Seller and used in connection with Seller's operations and attestations of "meaningful use," in connection with the operation of the hospital;

(u)    to the extent assignable, all rights of Seller in all warranties of any manufacturer or vendor in connection with the Personal Property;

(v)    all goodwill of the hospital evidenced by the Assets;

(w)    any interest of Sellers in the URL or domain name utilized for the hospital, together with certain content therein as described on Schedule 1.7(y) to the Stalking Horse Agreement;

(x)    the telephone and facsimile numbers used with respect to the operation of the hospital;

(y)    the names and symbols of the hospital set forth on Schedule 1.7(aa) to the Stalking Horse Agreement;

(z)    all claims, rights, interests and proceeds (whether received in cash or by credit to amounts otherwise due to a third party) with respect to amounts overpaid by Sellers to any third party with respect to periods prior to the Effective Time (e.g., such overpaid amounts may be determined by billing audits undertaken by Purchaser or Purchaser's consultants), provided, however, that any such amounts will be offset against amounts determined to have been underpaid by Sellers to any third party with respect to periods prior to the Effective Time; and

(aa)    any other assets owned by Sellers (which are not otherwise specifically described above) and which are used in the operation of the hospital and are not otherwise identified as an Excluded Asset in Section 1.8 of the Stalking Horse Agreement.

4

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors or their estates except to the extent set forth in the Stalking Horse Agreement or the Successful Bidder's Purchase Agreement (as that term is defined below).

The Assets subject to the Stalking Horse Agreement do not include the Excluded Assets, which are set forth in Section 1.8 of the Stalking Horse Agreement; provided, however, that any Potential Bidder (as defined below) may offer to purchase any of the Excluded Assets as identified in the Competing Purchase Agreement (as defined below).

## II.    THE BID PROCEDURES

In order to ensure that the Debtors receive the maximum value for the Assets, the Stalking Horse Agreement is subject to higher and better offers, and, as such, the Stalking Horse Agreement will serve as the "stalking horse" bid for the Assets.

### A.    Documentation Necessary for Qualification as a Potential Bidder

In order to be qualified to receive any confidential information from the Debtors, to submit an Initial Overbid (as defined below), and to participate in an auction with respect to the Assets (the "Auction"), a potential bidder (each, an "Interested Party") must submit each of the following to the Notice Parties (as defined below):

> (1)    A written, executed and unqualified agreement to be bound by these Bidding Procedures and the Order approving these Bidding Procedures;

> (2)    An executed confidentiality agreement in a form reasonably satisfactory to the Debtors, which shall include appropriate and customary protections associated with confidential and proprietary information and inure to the benefit of the Successful Bidder (as defined below); and

> (3)    Sufficient information, including as reasonably requested by the Debtors to allow the Debtors to determine that the Interested Party has or will have the financial wherewithal and any required organizational authorizations to close the applicable transactions, including, but not limited to current audited financial statements (or such other form of financial disclosure and credit quality support or enhancement acceptable to the Debtors) and latest unaudited financial statements of the Interested Party or, if the Interested Party is an entity formed for the purpose of acquiring the Assets, current audited financial statements and latest unaudited financial statements of the equity holders or sponsors of the Interested Party who will guarantee the obligations of the Interested Party, or such other form of financial disclosure and/or credit-quality support or enhancement, if any, that will allow the Debtors to make a reasonable determination as to the Interested Party's financial and other capabilities to consummate the Sale.

An Interested Party that delivers the documents and information described above and that the Debtors, after consultation with the Committee, determine in their reasonable business judgment, after consultation with their advisors, is likely (based on availability of financing, experience and

other considerations deemed relevant by the Debtors in consultation with the Committee) (i) to be able to consummate the sale and (ii) is pursuing the transaction in good faith, will be deemed to be a "Potential Bidder."

As promptly as practicable after an Interested Party delivers all of the materials required above, the Debtors will determine, in consultation with the Committee, and will notify the Interested Party as to whether the Interested Party is deemed to be a Potential Bidder.  Prime and all Potential Bidders will be simultaneously notified of a new Potential Bidder as soon as reasonably practicable after an Interested Party is deemed to be a Potential Bidder, and the new Potential Bidder will concurrently be notified of all existing Potential Bidders.

### B.    Due Diligence

Within two (2) days of identifying Potential Bidders, the Debtors will afford each Potential Bidder, subject to execution of a confidentiality agreement in a form reasonably satisfactory to the Debtors, with all due diligence access and information provided to Prime and such additional due diligence access or information as the Debtors deem appropriate, in their reasonable discretion, which must include contractual obligations to limit access to certain proprietary information.  Any Potential Bidder may request additional due diligence as well as information. The Debtors must promptly advise Prime and all Potential Bidders in the event that any party receives diligence Prime or any Potential Bidder has not previously received and shall promptly provide Prime and all Potential Bidders with access to such diligence materials.  The due diligence period shall extend through and include the Bid Deadline (as defined below). Additional due diligence will not be provided after the Bid Deadline.

### C.    Provisions Governing Qualifications of Overbids

A bid submitted will be considered a qualified bid only if the bid is submitted by a Potential Bidder and complies with all of the following (collectively, a "Qualified Bid"):

> (1)    includes a proposed purchase agreement, including all exhibits and schedules thereto (the "Competing Purchase Agreement"), duly authorized and executed by the Potential Bidder, that:

>> (A)    contains a modified version of the Stalking Horse Agreement on terms and conditions no less favorable than the Stalking Horse Agreement, and a redlined, marked copy showing all changes between the Competing Purchase Agreement and the Stalking Horse Agreement;

>> (B)    provides for a purchase price expressed in U.S. dollars (the "Competing Purchase Price") that includes cash consideration of not less than (i) the Purchase Price (*i.e.*, $49,150,000), *plus* (ii) the amount of the Break-Up Fee (which shall be $1,228,750), *plus* (iii) the amount of Expense Reimbursement (not to exceed $200,000), *plus* (iv) an initial $500,000 overbid (such amount, the "Minimum Overbid");

>> (C)    remains open and irrevocable until (i) the closing of the Sale if it is selected as the winning bid at any auction or (ii) the earlier of the closing

6

of the Sale or January 31, 2016 if such bid is selected as the back-up bid at
any auction, unless otherwise agreed to by the Debtor, in the consultation
with the Committee, and Back-Up Bidder (as defined below);

(D)    specifically disclaims any right of the Potential Bidder to receive a
fee analogous to a break-up fee or to compensation under Section 503(b)
of the Bankruptcy Code for making a substantial contribution;

(E)    identifies with specificity the executory contracts and unexpired
leases the Potential Bidder wishes to assume and states that the Potential
Bidder will pay all cure costs and such payments will be made (i) within
10 business days of the closing date to the extent a particular cure cost is
undisputed at that time or (ii) within 10 business days after a cure cost's
resolution by agreement or final court order to the extent it is disputed as
of the closing date; provided, however, that Cigna HealthCare of New
Jersey, Inc. must be notified of the proposed disposition of the Hospital
Managed Care Agreement, effective November 1, 1997, between Cigna
and Saint Michael's Medical Center, Inc. (the "Cigna Provider
Agreement") no later than thirty (30) days prior to the closing date of the
Sale and the Cigna Provider Agreement cannot be added to or deleted
from the list of contracts and leases to be assumed after thirty (30) days
prior to the closing date of the Sale; and

(F)    contains a proposed closing date that is not later than
December 15, 2015.

(2)    includes a cashier's check made payable to the order of the
Debtors equal to $2,000,000 (the "Potential Bidder's Deposit"), which will be
retained by the Debtors as a refundable deposit for application against the
purchase price at the closing of the transaction, or returned to the Potential Bidder
within five business days following conclusion of the Auction, unless the
Potential Bidder is the Successful Bidder or the Back-Up Bidder whose deposits
shall be held as provided in Section J below;

(3)    contains sufficient information concerning the Potential Bidder's
ability to provide adequate assurance of performance with respect to executory
contracts and unexpired leases;

(4)    be accompanied by adequate evidence based upon the Debtors'
business judgment, in consultation with the Committee, establishing that the
Potential Bidder has the financial ability to pay the Competing Purchase Price set
forth in the Competing Purchase Agreement;

(5)    be accompanied by adequate evidence based upon the Debtors'
business judgment, in consultation with the Committee, establishing that the
Potential Bidder has the ability to obtain all of the necessary government

7

approvals set forth in section 4.14 of the Stalking Horse Agreement to consummate the Sale;

(6)    contain terms and conditions that are higher and better than the terms and conditions of the Stalking Horse Agreement as determined by the Debtors using their business judgment, in consultation with the Committee;

(7)    disclose the identity of each entity that will be bidding for the Assets or otherwise participating in connection with such bid, including the names and addresses of any members or individuals with an interest in the entity, and the complete terms of any such participation, as well as disclose the organization form and the business conducted by each entity.  Any Qualified Bidder shall be required to provide such additional information as the Debtors, in consultation with the Committee, may reasonably require regarding the identity of the bidder and related persons and entities;

(8)    be accompanied by adequate evidence based upon the Debtors' business judgment, in consultation with the Committee, establishing that the Potential Bidder is capable and qualified, financially, legally, and otherwise, of unconditionally performing all obligations under the Competing Purchase Agreement;

(9)    disclose any and all regulatory approvals the Potential Bidder must obtain in order to close on the transaction contemplated by the Competing Purchase Agreement and provide information sufficient to allow the Debtors to determine that the Potential Bidder is likely to receive all necessary regulatory approvals in a timely manner, including without limitation, a certificate of need pursuant to the Health Care Facilities Planning Act, and approval pursuant to the Community Health Care Assets Protection Act ("CHAPA");

(10)    is accompanied by an affirmative statement that there are no conditions precedent to the Potential Bidder's ability to enter into a definitive agreement and that all necessary internal, board and shareholder approvals related to the submission, execution, delivery and closing of the Competing Purchase Agreement have been obtained prior to the bid;

(11)    it includes an acknowledgement and representation that the Potential Bidder is solvent and will not be rendered insolvent as a result of any of the transactions contemplated by the Competing Purchase Agreement;

(12)    it includes an acknowledgement and representation that the Potential Bidder: (A) has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer; (B) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid; and (C) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the

8

Assets or the completeness of any information provided in connection therewith or with the Auction (defined below), except as expressly stated in the Competing Purchase Agreement;

(13)    it contains such other information reasonably requested by the Debtors, in consultation with the Committee; and

(14)    it is received prior to the Bid Deadline.

Prime, and any Potential Bidder that submits a timely, conforming Competing Purchase Agreement and Potential Bidder's Deposit (an "Initial Overbid"), as set forth above and as determined by the Debtors, in consultation with the Committee, shall each be deemed a "Qualified Overbidder" and may bid for the Purchased Assets at the Auction. Any entity that fails to submit a timely, conforming Initial Overbid, as set forth above, other than Prime, shall be disqualified from bidding for the Assets at the Auction.

In addition, each Potential Bidder that submits a Qualified Bid must also file with the State of New Jersey a "draft" Certificate of Need Application (the "CN Application") on or before the Bid Deadline, and deliver a copy of the CN Application to counsel for the Debtors and counsel for the Committee. The CN Application must also be filed and served on the following individuals: Jacqueline Augustine, DAG, Section Chief, Health and Human Services Section, New Jersey Division of Law, R.J. Hughes Justice Complex, 25 Market Street, 8th Floor, P.O. Box 112, Trenton, NJ 08625-0112; John A. Calabria, Director, Division of Certificate of Need & Licensure, New Jersey Department of Health, 171 Jersey Street, Bldg. 5, First Floor, Trenton, New Jersey 06611; and Mark E. Hopkins, Executive Director, Health Care Facilities Financing Authority, Station Plaza Bldg. #4, 22 South Clinton Avenue, Trenton, NJ 08609-1212.

### D.    Bid Deadline

A Potential Bidder that desires to make an Initial Overbid will deliver written copies of its bid to the following parties (collectively, the "Notice Parties"): (i) counsel to the Debtors: Cole Schotz P.C., 25 Main Street, Hackensack, New Jersey, 07601 (Attn:  Michael D. Sirota, Esq. (msirota@coleschotz.com) and Ryan T. Jareck, Esq. (rjareck@coleschotz.com)), and (ii) proposed counsel to the Committee: Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, NJ 07102 (Attn:  Andrew H. Sherman, Esq. (asherman@sillscummis.com) and Boris I. Mankovetskiy, Esq. (bmankovetskiy@sillscummis.com)), so as to be received by no later than **November 3, 2015 at 5:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline").

### E.    Evaluation of Competing Bids

A Qualified Bid will be valued based upon several factors including, without limitation, (1) the aggregate consideration of such bid, (2) the risks and timing associated with consummating such bid, (3) the terms and conditions of the Competing Purchase Agreement, (4) the ability of the Qualified Overbidder to obtain appropriate state and regulatory approvals, (5) whether the Debtors' estates will have to incur and pay the Expense Reimbursement and Breakup Fee (the "Bid Protections"), and (6) any other factors deemed relevant by the Debtors in their reasonable business judgment and, in consultation with the Committee.

9

### F.    No Competing Bid

If no timely, conforming Initial Overbid is submitted, the Debtors shall not conduct an Auction, Prime will be named the Successful Bidder (as defined below) following the Bid Deadline and the Debtors shall request at the Sale Hearing that the Bankruptcy Court approve the Debtors' entry into the Stalking Horse Agreement, including the Sale of the Purchased Assets, and request that the Sale Order be immediately effective upon entry.

### G.    Auction Procedures

If one or more timely conforming Initial Overbids is received for all or some of the Assets, the Debtors will conduct an auction of the Assets (the "Auction") on **November 5, 2015 at 10:00 a.m. (prevailing Eastern Time)**, at the offices of Cole Schotz P.C., 25 Main Street, Hackensack, New Jersey 07601, or at such other location as shall be identified in a notice filed with the Bankruptcy Court at least 24 hours before the Auction, in which Prime and all other Qualified Overbidders may participate.  The Auction shall be governed by the following procedures:

(1)    the Auction will be conducted openly and the actual identity of each Qualified Overbidder will be disclosed on the record at the Auction;

(2)    the Committee members, their respective professionals, and the Committee's professionals will be permitted to attend as well as a representative of and/or a professional representing each Union; provided, however, that only Qualified Overbidders may participate in the Auction and all Qualified Overbidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Overbidder attending the Auction in person;

(3)    each Qualified Overbidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale;

(4)    at least one (1) business day prior to the Auction, each Qualified Overbidder who has timely submitted a Qualified Bid must inform the Debtors and the Committee whether it intends to attend the Auction; provided, however, in the event a Qualified Overbidder elects not to attend the Auction, such Qualified Overbidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Overbidder until the date of the selection of the Successful Bidder at the conclusion of the Auction.  At least one (1) business day prior to the Auction, the Debtors will advise Prime and all other Qualified Overbidders of the Qualified Bid which the Debtors, in consultation with the Committee, believe, in their reasonable discretion, is the highest or otherwise best offer (the "Starting Bid");

(5)    bidding will commence at the Starting Bid;

(6)    each subsequent bid shall be in increments of no less than $500,000 above such bidder's immediately preceding bid, and the Debtors, in consultation with the Committee, will evaluate each such bid.  After the first

10

round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid that they, in consultation with the Committee, believe to be the highest or otherwise better offer (the "Leading Bid"). A round of bidding will conclude after each participating Qualified Overbidder has had the opportunity to submit a subsequent bid with full knowledge of the Leading Bid. If any Qualified Overbidder fails to make a subsequent bid, it will not be permitted to bid in any subsequent rounds of bidding at the Auction.

(7)    for the purpose of evaluating the value of the consideration provided by subsequent bids (including any subsequent bid by Prime), the Debtors, in consultation with the Committee, will give effect to (i) any additional liabilities to be assumed by a Qualified Overbidder; (ii) any additional costs which may be imposed on the Debtors; and (iii) the economic impact of the Bid Protections as an addition to any subsequent bid by Prime;

(8)    the Auction shall be conducted openly and each bidder will be informed of the terms of the previous bid determined by the Debtors, in consultation with the Committee, to have been the highest and otherwise best bid;

(9)    each bidder will be permitted a fair, but limited, amount of time to respond to the previous bid at the Auction;

(10)    no relative bids will be allowed or considered;

(11)    the Auction shall continue until there is only one highest and otherwise best bid in the Debtors' determination, in consultation with the Committee (the "Successful Bidder");

(12)    the bidding at the Auction shall be transcribed; and

(13)    the Debtors, in consultation with the Committee, shall have the ability to modify the procedures for the Auction in a manner designed to maximize the recovery to the Debtors' estate, provided that any such modification shall not be inconsistent with the Bidding Procedures, the approved Bid Protections, and the valuation of the economic impact thereof in connection with subsequent bids as set forth in G(7)(iii) above.

As used herein, the term "Successful Bidder's Purchase Agreement" shall mean, as applicable, the (i) Competing Purchase Agreement of the Successful Bidder, if the Successful Bidder is any Qualified Overbidder other than Prime, or (ii) Stalking Horse Agreement, if Prime is the Successful Bidder, as any such agreements may be modified during the Auction pursuant to the procedures set forth in the immediately preceding paragraph.

Prior to the Auction, all bidders are encouraged to address and seek to resolve with any relevant unions any issues concerning 11 U.S.C. § 1113 and/or assumption and assignment of the Debtors' collective bargaining agreements.

12119344v6
August 24, 2015

In addition, in conducting the Auction and determining which Qualified Bid, if any, is the highest, best, or otherwise financially superior offer for the Assets, the Debtors, in consultation with the Committee, will consider and evaluate all bid elements including, but not limited to, those bidders who have reached agreement with any or all of the unions.  Nothing herein shall be construed to in any way limit the Debtors' fiduciary duty or ascribe value to any bid element.

### H.    Notice of Bidding Procedures

Notice of the Bidding Procedures, subject to the approval of the Bankruptcy Court, shall be published in *The Star Ledger* and *The New York Times*.

### I.    Selection of Successful Bidder(s)

The determination of the Successful Bidder(s) by the Debtors, in consultation with the Committee, at the conclusion of the Auction shall be final, subject only to approval by the Bankruptcy Court.

Unless otherwise agreed to by the Debtors, in consultation with the Committee and the Successful Bidder, within two (2) business days after the conclusion of the Auction, the Successful Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bidder's bid was made.  Within two (2) business days after the conclusion of the Auction (if any), the Debtors shall file a notice identifying the Successful Bidder and the second highest or best bid (the "Back-Up Bid" and the Qualified Bidder submitting such Back-Up Bid, the "Back-Up Bidder"), with the Bankruptcy Court and shall serve such notice by fax, email or overnight mail to all counterparties whose contracts are proposed to be assumed and assigned.

The Debtors will sell the Assets, and assume and assign the designated executory contracts and unexpired leases, to the Successful Bidder pursuant to the terms of the Successful Bidder's Purchase Agreement upon the approval of such Successful Bidder's bid by the Bankruptcy Court at the Sale Hearing.  If the sale of the Assets to the Successful Bidder closes, the Successful Bidder's Deposit shall be applied to the purchase price at closing, and the Back-Up-Bidder deposit returned to the Back-Up Bidder.  If the sale of the Assets to the Successful Bidder does not close as a result of the Successful Bidder's breach or default, then, the Successful Bidder's Deposit shall be forfeited to the Debtors' estates, and the Assets shall be sold to the Back-Up Bidder.  If the sale of the Assets to the Back-Up Bidder does not close as a result of the Back-Up Bidder's breach or default, then, the Back-Up Bidder's Deposit shall be forfeited to the Debtors' estates.

### J.    Return of Deposits

All deposits shall be returned to each bidder not selected by the Debtors as the Successful Bidder or Back-Up Bidder no later than five (5) business days following the conclusion of the Auction. The Good Faith Deposit of the Back-Up Bidder shall be returned to the Back-Up Bidder no later than 72 hours after the earlier of the closing of the transaction with the Successful Bidder or January 31, 2016.  If the Successful Bidder timely closes the transaction, its Good Faith Deposit shall be credited towards the Purchase Price.  If the Successful Bidder fails to timely close the

12

transaction, and the Assets are sold to the Back-Up Bidder, such Back-Up Bidder's Good Faith
Deposit shall be credited towards the purchase price.

## III.    <u>SALE HEARING</u>

The Debtors will seek entry of an order from the Bankruptcy Court at the Sale Hearing, to begin
at **10:00 a.m. (prevailing Eastern Time) on November 12, 2015**, approving and authorizing the
Sale to the Successful Bidder on terms and conditions determined in accordance with the
Bidding Procedures and the Order approving the Bidding Procedures.

13

# <u>EXHIBIT 2</u>

## Exhibit 2

## ASSUMPTION AND ASSIGNMENT PROCEDURES

Set forth below are the procedures that shall apply to the proposed assumption and assignment (the "**Assumption and Assignment Procedures**") of any executory contract or unexpired lease that may become an Assumed Contract and Lease to be assigned to the Proposed Purchaser or such other party that may be the Successful Bidder (collectively, with the Proposed Purchaser, a "**Potential Bidder**"). Unless otherwise noted, capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the affixed Bidding Procedures Order and/or Bidding Procedures, as applicable.

## Assumption Notice

Within ten (10) days after entry of the Bidding Procedures Order, the Debtors will file and serve a notice (the "**Notice of Possible Assumption and Assignment**") of the potential assumption and assignment of any Assumed Contract and Lease(s) to a Potential Bidder pursuant to section 365 of the Bankruptcy Code, which shall be substantially in the form of Exhibit 3 attached to the Bidding Procedures Order and shall set forth the following information, to the best of the Debtors' knowledge, as applicable: (i) all of the Debtors' executory contracts and unexpired leases that potentially could become an Assumed Contract and Lease; (i) the names and addresses of the counterparties to all such executory contracts and unexpired leases (the "**Non-Debtor Parties**"); (ii) the proposed amount that must be paid to cure all prepetition and post-petition defaults under all such executory contracts and unexpired leases pursuant to section 365(b)(1)(A) of the Bankruptcy Code (for each listed executory contract or unexpired lease the "**Cure Amount**"), if any; (iii) the procedures for Non-Debtor Parties to receive Adequate Assurance Information; and (iv) the deadlines and procedures for filing objections to the potential assumption and assignment of any executory contract or unexpired lease listed in the Notice of Possible Assumption and Assignment.

## Service of the Notice of Possible Assumption and Assignment

The Debtors will cause the Notice of Possible Assumption and Assignment to be filed on the docket of the Debtors' bankruptcy cases and served upon the following parties (the "**Assumption Notice Parties**") (i) the Non-Debtor Parties and their counsel, if known; (ii) counsel to the Proposed Purchaser, Adam T. Berkowitz, Esq., Garfunkel Wild, P.C., 111 Great Neck Road, Great Neck, NY 11021; (iii) proposed counsel to the Committee, Andrew Sherman, Esq., Sills, Cummis & Gross P.C., One Riverfront Plaza, Newark, NJ 07102, (iv) the Office of the United States Trustee, One Newark Center, 1085 Raymond Boulevard, Suite 2100, Newark, NJ 07102 (Attn: Fran Steele, Esq.), (v) counsel to 1199, Mitchell Malzberg, Esq., 6 E. Main Street, Suite 7, Clinton, NJ 08809, (vi) counsel to JNESO, Joseph Schwartz, Esq., Riker Danzig Scherer Hyland Perretti LLP, Headquarters Plaza, One Speedwell Avenue, Morristown, NJ 07962-1981, and (vii) any other parties in interest who are required to be given notice pursuant to Federal Rule of Bankruptcy Procedure 2002.

## Cure Objections

Any Non-Debtor Party who objects to the Debtors' proposed Cure Amount must file and serve a written objection to the Debtors' proposed Cure Amount (a "**Cure Objection**") so that such Cure Objection is filed with the Clerk of the Court, United States Bankruptcy Court, Martin Luther King Jr. Federal Building, 50 Walnut Street, Newark, New Jersey 07102, and is actually received by the Debtors' counsel, Cole Schotz P.C., 25 Main Street, Hackensack, New Jersey 07601 (Attn: Michael D. Sirota, Esq.) and the other Assumption Notice Parties (other than the other Non-Debtor Parties) by no later than **October 21, 2015 at 4:00 p.m. (prevailing Eastern Time)**; provided, however, that, to the extent that the list of Assumed Contracts and Leases is modified after October 14, 2015, objections to the assumption and assignment of any contracts and/or leases added to the list of Assumed Contracts and Leases ("**Added Contracts**") shall be due no later than seven (7) days following service of notice of the modification upon the non-debtor parties to the Added Contracts. To the extent that the list of Assumed Contracts and Leases is modified later than seven days prior to the Sale Hearing, the proposed assumption and assignment of any Added Contracts shall not be heard or considered by the Court at the Sale Hearing absent consent of the non-debtor third party to such contract or lease.

## Adequate Assurance Objections

Any Non-Debtor Party who objects to the proposed assumption and assignment of its executory contract or unexpired lease on adequate assurance grounds must file and serve a written objection on such basis (an "**Adequate Assurance Objection**") so that such Adequate Assurance Objection is filed with the Clerk of the Court, United States Bankruptcy Court, Martin Luther King Jr. Federal Building, 50 Walnut Street, Newark, New Jersey 07102, and is actually received by (i) the Debtors' counsel, Cole Schotz P.C., 25 Main Street, Hackensack, New Jersey 07601 (Attn: Michael D. Sirota, Esq.) (ii) proposed counsel to the Committee, Andrew Sherman, Esq., Sills, Cummis & Gross P.C., One Riverfront Plaza, Newark, NJ 07102, and (iii) the Assumption Notice Parties (other than the other Non-Debtor Parties) by no later than **October 21, 2015 at 4:00 p.m. (prevailing Eastern Time),** if such Adequate Assurance Objection relates to the Proposed Purchaser, or (iv) with respect to such Potential Bidder other than the Proposed Purchaser, no later than **November 6, 2015 at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**").

## Event of No Objection

If any Non-Debtor Party fails to timely file a Cure Objection or Adequate Assurance Objection, then: (i) the Debtors' proposed Cure Amount shall, for all periods through Closing, be binding upon the Non-Debtor Party with respect to the Debtors' obligations under Section 365(b) of the Bankruptcy Code, and (ii) the Sale Order will constitute a final determination that, as of Closing, the Debtors have satisfied their burden of proof under Sections 365(b)(1)(C), 365(b)(3) and 365(f)(2)(B).

## Payment of Cure Amount

All undisputed Cure Amounts shall be paid in accordance with Section 365(b)(1)(A) of the Bankruptcy Code. Any disputed Cure Amount must be paid by the earlier of (i) when the

2

Debtors and the Non-Debtor Party can agree to an amount in writing to be the Cure Amount, or (ii) in accordance with Section 365(b)(1)(A) of the Bankruptcy Code after the date of the entry of an order by the Bankruptcy Court determining the Cure Amount.

## Adequate Assurance Information.

The Debtors shall provide, with respect to the Proposed Purchaser and each Qualified Bidder, such information, as is reasonably requested by a Non-Debtor Party, to demonstrate that the Proposed Purchaser or such other Qualified Bidder is able to fulfill all obligations in connection with satisfying adequate assurance of future performance under any Assumed Contract and Lease ("**Adequate Assurance Information**").

The Debtors shall (a) within 24 hours of receipt of a Bid from a Potential Bidder (other than the Proposed Purchaser) and (b) with respect to the Proposed Purchaser, by no later than **October 14, 2015 at 4:00 p.m. (prevailing Eastern Time)** (the later of (a) and (b), the "**Adequate Assurance Deadline**"), provide a copy of the Adequate Assurance Information to those Non-Debtor Parties (or their counsel) who have (x) submitted a written request (e-mail to Debtors' counsel is acceptable) for Adequate Assurance Information and (y) confirmed in writing to the Debtors' counsel (e-mail is acceptable) their agreement to keep such Adequate Assurance Information strictly confidential and use it solely for the purpose of evaluating whether a Potential Bidder, including the Proposed Purchaser, has provided adequate assurance of future performance under the applicable Assumed Contract or Lease(s).

Non-Debtor Parties shall object to the Sale on adequate assurance grounds in accordance with these Assumption and Assignment Procedures.

3

# EXHIBIT 3

**EXHIBIT 3**

**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
Michael D. Sirota, Esq.
Gerald H. Gline, Esq.
Ryan T. Jareck, Esq.
(201) 489-3000
(201) 489-1536 Facsimile
*Proposed Attorneys for Saint Michael's*
*Medical Center, Inc., et al., Debtors-in-Possession*

| | |
|---|---|
| In re:<br><br>SAINT MICHAEL'S MEDICAL CENTER, INC., *et al.*,[1]<br><br>Debtors-in-Possession. | UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY HONORABLE VINCENT F. PAPALIA CASE NO. 15-24999 (VFP)<br><br>Chapter 11 |

**NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH
THE SALE OF SUBSTANTIALLY ALL THE DEBTORS' ASSETS**

PLEASE TAKE NOTICE OF THE FOLLOWING:

On August 10, 2015, Saint Michael's Medical Center, Inc., *et al.*, the within debtors and debtors-in-possession (the "**Debtors**"), filed a motion (the "**Sale Motion**") with the United States Bankruptcy Court for the District of New Jersey (the "**Court**") seeking, among other things, entry of an order (the "**Bidding Procedures Order**"): (i) approving procedures (the "**Bidding Procedures**") for submitting bids for the purchase of substantially all the Debtors' assets (the "**Assets**"); (ii) approving procedures (the "**Assumption and Assignment Procedures**") for the assumption and assignment of certain executory contracts (the "**Contracts**") and unexpired leases (the "**Leases**") in connection with the sale of the Assets and resolution of any objections thereto; and (iii) scheduling the date and time of the hearing (the "**Sale Hearing**") to consider approval of the proposed sale of the Assets to the successful bidder for the Assets (the "**Successful Bidder**").

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal identification number are: Saint Michael's Medical Center, Inc. (6046); Columbus Acquisition Corp. (6342); Saint James Care, Inc. (6230); and University Heights Property Company, Inc. (0162).

54020/0001-11782283v2
August 24, 2015

On August 24, 2015, the Court entered the Bidding Procedures Order.

At the Sale Hearing, the Debtors may seek to assume and assign the Contracts and Leases identified on **Exhibit 1** attached hereto (the "**Assignment Schedule**") to the Successful Bidder in connection with the sale of the Assets.

Any objection to the assumption and assignment of any Contract or Lease identified on the Assignment Schedule, including, without limitation, any objection to the amount, if any, determined by the Debtors to be necessary to be paid to cure any existing default under such Contract or Lease (the "**Cure Amount**") or to the ability of the Successful Bidder to provide adequate assurance of future performance under such Contract or Lease (an "**Adequate Assurance Objection**"), must (i) be in writing, (ii) set forth the basis for the objection as well as any cure amount that the objector asserts to be due (in all cases with appropriate documentation in support thereof), and (iii) be filed with the Clerk of the Court, United States Bankruptcy Court, Martin Luther King Jr. Federal Building, 50 Walnut Street, Newark, New Jersey 07102, and served on (a) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601 (Attn: Michael D. Sirota, Esq.), counsel for the Debtors, (b) proposed counsel to the Committee, Andrew Sherman, Esq., Sills, Cummis & Gross P.C., One Riverfront Plaza, Newark, NJ 07102, and (c) counsel for the Proposed Purchaser, Adam T. Berkowitz, Esq., Garfunkel Wild, P.C., 111 Great Neck Road, Great Neck, NY 11021, by no later than **October 21, 2015 at 4:00 p.m. (prevailing Eastern Time)** (the "**Cure Objection Deadline**"); provided, however, that, to the extent the Assignment Schedule is modified after October 14, 2015, objections to the assumption and assignment of any contracts and/or leases added to the Assignment Schedule ("**Added Contracts**") shall be due no later than seven (7) days following service of notice of the modification upon the non-debtor parties to the Added Contracts. To the extent that the Assignment Schedule is modified later than seven days prior to the Sale Hearing, the proposed assumption and assignment of any Added Contracts shall not be heard or considered by the Court at the Sale Hearing absent consent of the non-debtor third party to such contract or lease. If the bid of the Proposed Purchaser is not the Successful Bidder, the non-debtor parties to the Assumed Contracts and Leases shall have until **November 6, 2015 at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**") to object to the assumption and assignment of such Assumed Contract and Lease solely on the issue of whether the Successful Bidder (if other than the Proposed Purchaser) can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

Any request for Adequate Assurance Information (as defined in the Sale Procedures attached as Exhibit A to the Bidding Procedures Order) regarding any Bidder (as defined in the Bidding Procedures Order) (a "**Request for Adequate Assurance Information**") may be made by email to rjareck@coleschotz.com and must (i) include an email address, postal address and/or facsimile number to which a response to such request will be sent, and (ii) confirm that the recipient will enter into a Confidentiality Agreement in accordance with the Sale Procedures. Upon receiving a Request for Adequate Assurance Information, the Debtors shall provide such party with Adequate Assurance Information by the method requested in the Request for Adequate Assurance and by the deadlines imposed under the Sale Procedures.

If no objection to the proposed assumption and assignment of a Contract or Lease is timely received by the applicable Objection Deadline, as set forth above (as established under the

54020/0001-11782283v2
August 24, 2015

Assumption and Assignment Procedures), and subject to the Debtors' obligation to serve a Supplemental Assignment Notice for any Assumed Contract and Lease the Debtors may seek to assume and assign to the Proposed Purchaser that were not initially included in the Assignment Schedule, then the assumption and assignment is authorized and the respective Cure Amount set forth in the Assignment Schedule shall be binding upon the counterparty to the Contract or Lease for all purposes and will constitute a final determination of the Cure Amount required to be paid by the Debtors in connection with such assumption and assignment to the Successful Bidder.

Except as otherwise provided in the Assumption and Assignment Procedures, to the extent that any entity does not timely object as set forth above, such entity shall be (i) forever barred from objecting to assumption and assignment of the Contracts and Leases identified on the Assignment Schedule, including, without limitation, asserting any additional cure payments or requesting additional adequate assurance of future performance, (ii) deemed to have consented to the applicable Cure Amount, if any, and to the assumption and assignment of the applicable Contract or Lease, (iii) bound to such corresponding Cure Amount, if any, (iv) deemed to have agreed that the Successful Bidder has provided adequate assurance of future performance within the meaning of Section 365 of the Bankruptcy Code, (v) deemed to have agreed that all defaults under the applicable Contract or Lease arising or continuing prior to the effective date of the assignment have been cured as a result or precondition of the assignment, such that the Successful Bidder or the Debtors shall have no liability or obligation with respect to any default occurring or continuing prior to the assignment, and from and after the date of the assignment the applicable Contract or Lease shall remain in full force and effect for the benefit of the Successful Bidder and such entity in accordance with its terms, (vi) deemed to have waived any right to terminate the applicable Contract or Lease or designate an early termination date under the applicable Contract or Lease as a result of any default that occurred and/or was continuing prior to the assignment date, and (vii) deemed to have agreed that the terms of the Sale Order shall apply to the assumption and assignment of the applicable Contract or Lease.

If you agree with the Cure Amount identified on the Assignment Schedule and have no other objection to the Sale or the potential assumption and assignment of your executory contract or unexpired lease to the Proposed Purchaser, you need not take any further action.

The Debtors reserve the right to supplement and modify the Assignment Schedule up to the Closing of the sale; provided that to the extent that the Debtors add a Contract or Lease to the Assignment Schedule or modify the Cure Amount, the affected party shall receive a separate notice and an opportunity to object to such addition or modification.

54020/0001-11782283v2
August 24, 2015

**COLE SCHOTZ P.C.**
*Proposed Attorneys for Saint Michael's*
*Medical Center, Inc., et al., Debtors-in-Possession*

By:___*/s/ Michael D. Sirota*_____
      Michael D. Sirota
      Gerald H. Gline
      Ryan T. Jareck

DATED:  August 24, 2015

4

54020/0001-11782283v2
August 24, 2015

# EXHIBIT 4

**EXHIBIT 4**

**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
Michael D. Sirota, Esq.
Gerald H. Gline, Esq.
Ryan T. Jareck, Esq.
(201) 489-3000
(201) 489-1536 Facsimile
*Proposed Attorneys for Saint Michael's*
*Medical Center, Inc., et al., Debtors-in-Possession*

| | |
|---|---|
| In re:<br><br>SAINT MICHAEL'S MEDICAL CENTER, INC., *et al.*, [1]<br><br>          Debtors-in-Possession. | UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY HONORABLE VINCENT F. PAPALIA CASE NO. 15-24999 (VFP)<br><br>Chapter 11 |

**NOTICE OF BID DEADLINE, AUCTION AND SALE HEARING IN CONNECTION
WITH THE SALE OF SUBSTANTIALLY ALL THE DEBTOR'S ASSETS FREE AND
CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS**

    **PLEASE TAKE NOTICE OF THE FOLLOWING:**

       1.   Saint Michael's Medical Center, Inc., *et al.*, the within debtors and debtors-in-possession (the "**Debtors**"), seeks to sell substantially all their assets (the "**Assets**") free and clear of any and all liens, claims, encumbrances and interests.

       2.   On August 10, 2015, the Debtors filed a motion (the "**Sale Motion**") with the United States Bankruptcy Court for the District of New Jersey (the "**Court**") seeking, among other things, entry of an order (the "**Bidding Procedures Order**"): (i) approving procedures (the "**Bidding Procedures**") for (a) submitting bids for the purchase of substantially all the Debtors' assets, and (b) conducting an auction for the Debtors' assets (the "**Auction**"); (ii) authorizing the Debtors to enter into a stalking horse agreement for the purpose of establishing a minimum acceptable bid for the Assets; (iii) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases in connection with the sale of the Debtors' assets (the "**Assumption and Assignment Procedures**"); (iv)

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal identification number are:  Saint Michael's Medical Center, Inc. (6046); Columbus Acquisition Corp. (6342); Saint James Care, Inc. (6230); and University Heights Property Company, Inc. (0162).

54020/0001-11782366v2
August 24, 2015

scheduling (a) a deadline to submit bids for the Debtors' assets, (b) the date and time of the Auction, (c) the date and time of the hearing to consider approval of the proposed sale of the Debtors' assets (the "**Sale Hearing**"), and (d) a deadline to consummate the sale of the Debtors' assets; (v) approving the form and manner of notice of the deadline to submit bids for the Debtors' assets, the Auction and the Sale Hearing; and (vi) granting certain related relief.

> 3.   On August 24, 2015, the Court entered the Bidding Procedures Order.

> 4.   All interested parties are invited to make offers to purchase any of the Assets in accordance with the Bidding Procedures and the Bidding Procedures Order.  Copies of the Bidding Procedures and Bidding Procedures Order may be obtained by (a) written request to the Debtors' counsel, Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601 (Attn: Michael D. Sirota, Esq.); (b) accessing the Court's website at https://ecf.njb.uscourts.gov/ (please note that a PACER password is needed to access documents on the Court's website); (c) viewing the docket of these cases at the Clerk of the Court, United States Bankruptcy Court, Martin Luther King Jr. Federal Building, 50 Walnut Street, Newark, New Jersey 07102; or (d) the Debtors' court-appointed claims and noticing agent, Prime Clerk LLC.  All interested parties should carefully read the Bidding Procedures.

> 5.   The deadline to submit offers to purchase any of the Assets is **November 3, 2015 at 5:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline").  Pursuant to the Bidding Procedures and the Bidding Procedures Order, if two or more Qualified Bids (as defined in the Bidding Procedures) are received on or before the Bid Deadline, the Debtors shall conduct the Auction commencing on **November 5, 2015 at 10:00 a.m. (prevailing Eastern Time)**, at the offices of Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601 or such other location as shall be identified on the Court's website, which can be found at https://ecf.njb.uscourts.gov (please note that a PACER password is needed to access documents on the Court's website) and on the website maintained by the Debtors' court-appointed claims and noticing agent, Prime Clerk LLC, to determine the highest and otherwise best bid for the Assets (the "**Successful Bid**").  Only an entity that has submitted a Qualified Bid (a "**Qualified Bidder**"), the Office of the United States Trustee for the District of New Jersey (the "**United States Trustee**"), the statutory committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "**Creditors' Committee**"), and such entities' respective advisors are eligible to participate in the Auction.  The Auction may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Auction.  The Debtors reserve the right to cancel the Auction if two or more Qualified Bids are not received as of the Bid Deadline.

> 6.   The sale of the Assets to the Successful Bidder shall be presented for authorization and approval by the Court at the Sale Hearing, which is scheduled to be held on **10:00 a.m. (prevailing Eastern Time) on November 12, 2015** before the Honorable Vincent F. Papalia, at the United States Bankruptcy Court for the District of New Jersey, Martin Luther King, Jr. Federal Building, 50 Walnut Street, Third Floor, Newark, New Jersey 07102, Courtroom 3A.  The Sale Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing.

54020/0001-11782366v2
August 24, 2015

7.   Except as set forth in the Bidding Procedures Order, objections, if any, to approval of the sale of the Assets to the Successful Bidder, must (i) be in writing, (ii) comply with the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of New Jersey (the "**Local Rules**"), (iii) set forth the name of the objector, (iv) state with particularity the legal and factual bases for such objection, and (v) be filed with the Clerk of the Court, United States Bankruptcy Court for the District of New Jersey, Martin Luther King, Jr. Federal Building, 50 Walnut Street, Third Floor, Newark, New Jersey 07102, together with proof of service thereof, and served on the following parties so as to be actually received by **November 6, 2015 at 4:00 p.m. (prevailing Eastern Time)** (the "**Objection Deadline**"): (i) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601 (Attn: Michael D. Sirota, Esq.), counsel for the Debtors; (ii) proposed counsel to the Committee, Andrew Sherman, Esq., Sills, Cummis & Gross P.C., One Riverfront Plaza, Newark, NJ 07102; (iii) counsel for Prime Healthcare Services – Saint Michael's, LLC, Adam T. Berkowitz, Esq., Garfunkel Wild, P.C., 111 Great Neck Road, Great Neck, NY 11021, (iv) the Office of the United States Trustee for the District of New Jersey (Attn: Fran Steele, Esq.), (v) the Securities and Exchange Commission, (vi) the Internal Revenue Service, (vii) the United States Department of Justice, (viii) office of the Attorney General for the State of New Jersey, and (ix) any persons who have filed a request for notice in the above-captioned chapter 11 cases on or before the Objection Deadline.

8.   Failure of any entity to file an objection on or before the Objection Deadline shall be deemed to constitute consent to the sale of the Assets to the Successful Bidder and other relief requested in the Sale Motion, and be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Sale Motion, the Auction, the sale of the Assets, the assumption and assignment of Contracts and Leases to the Successful Bidder, or the Debtors' consummation and performance of the terms of the asset purchase agreement entered into with the Successful Bidder, if authorized by the Court.

9.   Pursuant to the Bidding Procedures and Bidding Procedures Order, the Successful Bidder shall be required to consummate the purchase of the Assets by **11:59 p.m. (prevailing Eastern Time) on December 15, 2015**.

3

10. This notice is subject to the full terms and conditions of the Sale Motion, the Bidding Procedures and the Bidding Procedures Order, and the Debtors encourage any interested parties to review such documents in their entirety.  To the extent that this notice is inconsistent with the Bidding Procedures Order, the terms of the Bidding Procedures Order shall govern.

DATED:  August 24, 2015          **COLE SCHOTZ P.C.**
*Proposed Attorneys for Saint Michael's*
*Medical Center, Inc., et al., Debtors-in-Possession*

By:___*/s/ Michael D. Sirota*_____
        Michael D. Sirota
        Gerald H. Gline
        Ryan T. Jareck

4